FARMERS LOAN & TRUST COMPANY OF SIOUX CITY, Appellant, v. WRIGHT COUNTY et al., Appellees.

**DRAINS: Mandatory Duty to Recognize Official Estimates.** The issuance and delivery to the contractor by a drainage engineer of a statutory monthly estimate of the work done (no fraud appearing) impose a *mandatory* duty on the county auditor to issue to the contractor warrants or improvement certificates to the amount of 80 per cent of the estimate, irrespective of the fact that the board of supervisors may claim that the work is not being done according to contract.

**DRAINS: Acceptance by Decree in Equity.** Equity will not, in the absence of fraud, decree that the engineer on a drainage improvement shall certify to the completion of the work and that the board of supervisors shall accept the work. Necessarily this is true when it appears that the work has not been substantially completed.

DRAINS:   Quantum Meruit for Balance Due.   Principle recognized that
3   *quantum meruit* will lie in favor of a contractor to recover the final
amount due and not embraced within the engineer's estimates.

*Appeal from Wright District Court.*—E. M. McCALL, Judge.

JUNE 25, 1921.

ACTION in mandamus to compel the defendants to issue war-
rants in payment for the construction of a drainage ditch. The
relief prayed for was denied, without prejudice to the right of
the plaintiff to file an amendment upon *quantum meruit.* Plain-
tiff appeals.—*Modified and affirmed.*

*Edwin J. Stason* and *G. R. Hill,* for appellant.

*Ramsay & Blackstone, Clock & Saley,* and *Birdsall, Mc-
Grath & Archerd,* for appellees.

FAVILLE, J.—I. The appellant is the assignee of one Daniel
J. Murphy, who had a contract for the construction of a county
joint drainage ditch, about one mile in length. The contract
called for the excavation of 28,824 cubic yards,
at 14.7 cents per cubic yard. Murphy began
the construction of the ditch on June 1, 1916,
and continued the same until on or about July 25, 1916. By
some mishap, after being awarded the contract, he failed to get
the contract and bond on file until September 25, 1916. All
parties agree that the work was done under the contract. The
engineer in charge of the work furnished the contractor with
two estimates: one on June 22, 1916, for 22,482.11 cubic yards;
and one on July 20, 1916, for 2,609.61 cubic yards. Eighty per
cent of the total amount due under the first estimate would have
been $2,643.96, and on the second estimate, $303.29. No amount
has been paid to either the contractor or the appellant, as his
assignee. It is the claim of the appellant that the contractor
performed the terms and conditions of the contract on his part,
and constructed the ditch in substantial compliance with the
requirements of the contract. On the other hand, it is contended
by the appellees that the contractor did not fully complete the

*(margin note: 1. DRAINS: manda-tory duty to recognize official estimates.)*

contract, and that, at the time he left the work, there were 913.2 cubic yards that had not been excavated. It is the contention of the appellant that the total amount remaining that was not excavated did not exceed 249 cubic yards, and that said amount, in view of the total size of the excavation, was so trivial and unimportant that there was a substantial compliance with the contract.

It is the contention in behalf of the appellees that the contractor failed to properly construct the ditch and dig the same to the grade prescribed by the engineer, and that he left an elevation or "hump" in the ditch, and that this caused silt to be deposited in the bottom of the ditch, which the contractor should have removed. On the other hand, it is the contention of the contractor that the silt that was deposited in the ditch was not due to any fault on his part in carrying out the contract, but that the silt washed into the ditch from the surface of the ground, being loose dirt that covered tile drains emptying into the ditch.

The county auditor refused to issue warrants upon the estimates furnished. The evidence is somewhat in conflict as to what was the basis originally for the refusal to pay for the work. Complaint appears to have been made that the contractor had not filed his contract and bond, and also that the work had not been completed according to contract, and that the engineer had not certified that the same had been completed to his satisfaction. The evidence tends to show that, by reason of the advance in price, the cost of removing the dirt from the ditch at the time of trial would be about 50 to 60 cents per cubic yard. The contract contains the following provision:

"The party of the second part shall keep ditch constructed by it in good condition and repair at its own expense until the same is finally accepted by the party of the first part. The party of the second part covenants to complete said work to the entire satisfaction of the first parties."

It is the contention in behalf of the appellees that the contractor is not entitled to receive any warrants upon his work until the same has been fully and finally approved by the engineer. It is the contention of the appellees that, where the work is not completed, as in the instant case, to the satisfaction of

the engineer, and where it may be necessary to relet the work, or a portion thereof, to fully complete the contract according to its plans and specifications, the board of supervisors can refuse to issue warrants in any amount to the contractor, and is entitled to maintain a counterclaim against the contractor for damages suffered by failure to complete the contract.

On the other hand, it is the contention of the appellant that, under the statute controlling such matters, the contractor is entitled, as a matter of law, to 80 per cent of the estimate made by the engineer of the work actually done.

The statute, Section 1989-a9, Code Supplement, 1913, provides as follows:

"The engineer in charge of the construction shall furnish the contractor monthly estimates of the amount of work done on each section and upon filing the same with the auditor, he shall draw a warrant in favor of such contractor, or deliver to him improvement certificates, as the case may be, for eighty per centum of the value of the work done according to the estimate, and when said improvement is completed to the satisfaction of the engineer in charge thereof and so certified by him to the board and approved by it, the auditor shall draw a warrant in favor of said contractor upon the levee or drainage fund, or deliver to him improvement certificates, as the case may be, for the balance due."

And Section 1989-a34 provides, in part, as follows:

"The engineer in charge of the work shall furnish the contractor monthly estimates of the amount of work done on each section and the amount due from each county, a duplicate of which shall be filed with the auditor of each of the several counties. Upon the filing of such statement each auditor shall draw a warrant or deliver to him improvement certificates, as the case may be, in favor of the contractor for eighty per centum of the amount due from his respective county. When said improvement is completed to the satisfaction of the engineer in charge and accepted by the boards of supervisors, the engineer shall certify such fact to the several county auditors and each county auditor shall draw a warrant in favor of the contractor, or deliver to him improvement certificates, for the balance due from his respective county."

It is conceded that, under this statute, the engineer in charge of this work furnished to the contractor two estimates, as above set forth. No final estimate was ever made by the engineer of the completion of the work.

It is the contention of the appellant that, under these provisions of the statute, he is entitled to a writ of mandamus compelling the county auditor to issue to him warrants in the two amounts above named, for the 80 per cent of the work that was certified by the engineer as having been completed. It is also his contention that, in fact, the entire contract was substantially completed, and that he is entitled to a writ of mandamus to compel the engineer and the board of supervisors to accept the same.

There is no claim of any fraudulent conduct on the part of either the engineer or the board of supervisors in refusing to accept the work. We think that, under the terms of the contract, it is clearly provided that the engineer 2. DRAINS: acceptance by decree is to exercise his judgment and discretion in in equity. determining whether the work has been completed according to the plans and specifications of the contract. The evidence in the case fails to show any fraud on the part of the engineer, and likewise fails to show such a full and complete compliance with the terms of the contract as brings it properly within the "substantial compliance" rule. Upon the record in this case, we hold that the appellant was not entitled to a writ of mandamus to compel the engineer to certify that the contract had been completed, or to require the board of supervisors to accept the same and the auditor to issue warrants therefor.

II. As above stated, it is the contention of the appellant, however, that he is entitled to a writ of mandamus upon the county auditor, requiring him to issue to the appellant warrants for 80 per cent of the estimates that had been certified by the engineer. The purpose of the statutes above set forth was, we believe, to enable a contractor engaged in the construction of a drainage improvement to receive pay to the extent of 80 per cent of the contract price of the work done and completed, as the work progressed. It is a matter of common knowledge that, in the construction of extensive drainage improvements, a

large amount of capital is required to successfully conduct the work of construction. The legislature evidently intended that contractors, under this statute, should not be required to wait until the completion and final acceptance of the work, but that they should be paid from time to time, as the work progressed, an amount equal to 80 per cent of the contract price of the work so completed. The provisions of the statute require the engineer to certify to the contractor and the auditor the amount of work that has been completed from time to time, as the work progresses. It is the express statutory provision that these estimates shall be made monthly, and shall be filed with the auditor; and, when the estimates are so made and filed, the statute is imperative that the auditor shall draw a warrant in favor of the contractor, or deliver to him improvement certificates for 80 per centum of the value of the work done, according to the estimate. This statute would be utterly meaningless if, when the engineer made this certificate to the auditor of the amount of work completed, the auditor could withhold the issuance of the warrant for the 80 per cent provided for. The same provision is made in Section 1989-a34, where the improvement is a joint drainage district, as in the instant case; and provision is made for the amount to be paid by each county. We think that these provisions of the statute, in so far as they relate to the issuance of a warrant for 80 per cent of the work done, if the engineer has certified the same, are mandatory. No act is required upon the part of the board of supervisors in respect to this matter. By the terms of the statute, the engineer is the party to determine and certify the work that has been done by the contractor, and the auditor has no discretion when such certificate is filed, except to issue a warrant for the 80 per cent provided for by the statute. It was the obvious purpose of the legislature, by this statute, to provide for the payment and advancement to the contractor, during the progress of the work, of 80 per cent of the value of the work done, and to hold back 20 per cent for the protection of the district, in case the work was not finally completed according to contract. At all times the district has a double remedy against the contractor: one, by the withholding of 20 per cent of the price of the work done; and the other, by action on the contractor's bond. Under the

terms of the contract in this case, the appellant could not recover this 20 per cent remaining on his estimates until the improvement was completed "to the entire satisfaction" of the board of supervisors. Under the evidence in this case, the contractor did not so complete the work. The improvement was not accepted as being completed according to the terms and provisions of the contract. Under such condition, the drainage district can resort, by proper proceedings, to the 20 per cent remaining in its hands, for the work actually completed and done by the contractor; and it also has redress against the contractor on his bond. But unless we are to ignore the plain and imperative provisions of this statute, and what we believe to be the clear purpose and intent of the legislature, the contractor was entitled to a warrant for the 80 per cent of the work certified by the engineer as having been completed. The appellant was entitled to a writ of mandamus, requiring the auditor to issue to him warrants for the 80 per cent of the said estimates, to wit, in the sum of $2,643.96 and $303.29. The appellant was not entitled to a writ of mandamus compelling the issuance of warrants for the 20 per cent of the two estimates that had been approved and certified to the county auditor, nor to a writ of mandamus compelling the engineer to certify that the work was completed.

For any sums claimed above the 80 per cent on the two estimates, the appellant can sue in *quantum meruit*, and is not entitled to a writ of mandamus. The court

3. DRAINS: *quantum meruit* for balance due.

properly continued the case, with permission to the appellant to sue in *quantum meruit*, and with the right on the part of the appellees to file a counterclaim for any injury suffered. In addition to that, the appellees would have a right to an independent action upon the contractor's bond. The ruling of the trial court in this regard was in line with our holding in *Federal Cont. Co. v. Board of Supervisors*, 153 Iowa 362, and *Littell v. Webster County*, 152 Iowa 206.

It follows that the decree of the district court should be modified in the following particulars: That a writ of mandamus should issue, requiring the appellees to issue a warrant to the appellant for $2,643.96, as of date June 26, 1919, and also for the further sum of $303.29, as of date July 20, 1919. In all other respects, the decree of the trial court will be af-

firmed. The cause will be remanded for decree in the lower court in accordance with this opinion, or the parties may have a decree entered in this court, as they may elect.

The costs on this appeal will be taxed, one half to the appellant and one half to the appellees. It is so ordered.—*Modified and affirmed.*

EVANS, C. J., STEVENS and ARTHUR, JJ., concur.